UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
AL INFINITY, LLC,

               Plaintiff,

        - against –

CROWN CELL, INC., HERSCHEL
SPALTER, ISSER BOYARSKY and
DOES 1-10,

              Defendants.

------------------------------X

**MEMORANDUM AND ORDER**

20 Civ. 4813 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

From early on in this litigation, the Court and the parties have been aware of the sole issue in the case -- whether the sale by defendants of two models of speakers bearing the Altec Lansing trademark was legitimate or counterfeit. The confusion on this seemingly simple and fundamental question arose from the fact that the speakers at issue were purchased from entities that were, at least previously, authorized by the Altec Lansing trademark owners to produce and distribute their products.

Plaintiff AL Infinity LLC ("AL Infinity" or "plaintiff") is the most recent owner of the Altec Lansing trademark, which had earlier been owned by Altec Lansing Technologies, Inc., Plantronics, Inc., and Altec Lansing, LLC ("plaintiff's predecessors"). Plaintiff's predecessors had relationships with third-party defendant Westview Industries, Inc. ("Westview") and

with an affiliate of Shenzhen Fenda Technology Co., Ltd. ("Fenda") to distribute and supply products.

In 2016 and 2017, defendant Crown Cell, Inc. ("Crown Cell"), founded by defendant Herschel Spalter ("Spalter"), purchased two types of Altec Lansing speakers from Westview and then resold the speakers on Amazon.com and Walmart.com.  Specifically, Crown Cell employee, defendant Isser Boyarsky ("Boyarsky," and collectively with Crown Cell and Spalter "defendants"), contacted Westview to purchase the items, as he had previously worked with Westview to buy these types of goods.  In turn, Westview contacted Fenda to fill the order.

However, when plaintiff saw the speakers for sale, it sent defendants a cease-and-desist letter, to which defendants immediately complied, while noting that they had purchased the goods from what they thought to be a legitimate vendor. Eventually, plaintiff filed the present suit, asserting a list of claims that all turned on whether the goods were counterfeit.

As noted, the factual question of whether the goods were actually counterfeit was identified at the onset, and plaintiff has been given several opportunities to learn the facts regarding these goods.  Despite these chances and its burden, plaintiff has failed to do so, yet nevertheless now seeks summary judgment.  In turn, defendants have cross-moved for summary judgment regarding

only the first cause of action for trademark counterfeiting.  For the reasons stated below, plaintiff's motion is denied in its entirety and defendants' motion is granted in its entirety.

**BACKGROUND**

**I.  Procedural History**

Plaintiff filed its complaint on June 24, 2020.  See ECF No. 7.  After defendants sought to dismiss the complaint, plaintiff filed an amended complaint on March 15, 2021, asserting five causes of action: (1) federal trademark counterfeiting under 15 U.S.C. § 1114; (2) federal trademark infringement under 15 U.S.C. § 1125(A); (3) injury to business reputation and state anti-dilution; (4) deceptive trade practices; and (5) common law unfair competition.  See ECF No. 26.  Defendants answered and then filed a third-party complaint against Westview on March 29, 2021.  ECF Nos. 27- 28.

After over a year of discovery, defendants sought leave to move for summary judgment on the federal counterfeiting claim, and their application was subsequently joined by third-party defendant Westview.  See ECF Nos. 45, 47.  However, plaintiff opposed the motion and requested additional discovery.  See ECF No. 46.  The Court then held a conference on June 29, 2022 regarding the proposed motion, during which it explicitly addressed plaintiff's burden to prove that the products were not authorized.  The Court

-3-

inquired whether plaintiff was planning to seek discovery from Fenda. Despite indicating its willingness to seek discovery from Fenda during the conference, plaintiff's subsequent proposal regarding the remaining discovery failed to include it. See ECF No. 48. The Court, in explaining the deficiencies in that proposal, once again reminded plaintiff of the "centrality" of a deposition of Fenda. ECF No. 51.

Nonetheless, in response to the Court's remarks, plaintiff stated that it "does not intend to depose a representative of Fenda" but now stated it would attempt to secure some emails and documents from Fenda. See ECF No. 52. Instead, it sought two party depositions. Id. The Court granted plaintiff's request for the two additional depositions and gave plaintiff another 90 days to complete discovery related to counterfeiting, at the conclusion of which defendants were permitted to make their motion. ECF No. 55. After the 90-day period elapsed, plaintiff, for the first time, sought permission to cross-move, and the Court entered a briefing schedule. See ECF Nos. 56, 59.

On January 5, 2023, defendants filed their motion for summary judgment, which included a memorandum of law, a Rule 56.1 Statement, the declaration of Coby Nixon with several exhibits ("Nixon Decl."), and a request to seal certain facts and exhibits. See ECF Nos. 60-68. A month later, plaintiff filed its opposition

-4-

to defendants' motion and a cross motion for summary judgment, which included a memorandum of law, a counterstatement to defendants' Rule 56.1 Statement, the declarations of Isaac Franco and Allen Steinberg, and a similar request to seal.  See ECF Nos. 70-77.  Finally, on March 2 and March 16, 2023 respectively, defendants filed their reply and opposition to plaintiff's motion, see ECF Nos. 79-80, and plaintiff filed its reply, see ECF No. 81-82.[1]

## II.  Local Rule 56.1 Statements

Before providing the factual background, the Court is compelled to address plaintiff's failure to adhere to Local Rule 56.1.  Local Rule 56.1 requires that a party moving for summary judgment submit "a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried," Local R. 56.1(a), and for the party opposing summary judgment to submit "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party."  Local R. 56.1(b). "Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would

---

[1] While the Court permitted third-party defendant Westview to submit briefing materials, see ECF No. 59, none were submitted.

be admissible, set forth as required by Fed. R. Civ. P. 56(c)."
Local R. 56.1(d).  These rules governing summary judgment "are
essential tools for district courts, permitting them to
efficiently decide summary judgment motions by relieving them of
the onerous task of hunting through voluminous records without
guidance from the parties."  <u>N.Y. Teamsters Conference Pension &
Ret. Fund v. Express Servs., Inc.</u>, 426 F.3d 640, 649 (2d Cir. 2005)
(internal quotation marks omitted).

     Despite moving for summary judgment, plaintiff has submitted
a wholly deficient Rule 56.1 statement and response.  It is
striking that plaintiff's statement of facts includes just
<u>fourteen</u> paragraphs to support its motion for summary judgment on
five causes of action.  <u>See</u> ECF No. 75 ¶¶ 54-67.  Moreover, each
paragraph is supported with only a reference to either the
declaration of Isaac Franco, the managing member of AL Infinity,
or the declaration of Allen Steinberg, an officer of third-party
defendant Westview.  <u>See</u> ECF Nos. 73, 64.  The declaration of
Franco, which contains the bulk of the factual allegations, goes
far beyond his own personal knowledge and fails to cite other
evidence supporting the propositions.[2]  <u>See</u> Declaration of Isaac
Franco ("Franco Decl."), ECF No 73.  The only evidence referenced

---

[2] On the other hand, the declaration of Allen Steinberg attempts to authenticate
emails between Steinberg and representatives of Fenda.  <u>See</u> Decl. of Allen
Steinberg ("Steinberg Decl."), ECF No. 74.

within the declaration are emails on which Mr. Franco was not included and the deposition of another witness in the case. This is simply improper. Moreover, by structuring the facts in this way, defendants responded, pursuant to the local rules, to each paragraph in the Rule 56.1 statement, but not to plaintiff's additional allegations in the declarations.

The Court has "considerable discretion in fashioning a remedy to address Plaintiff's failure to submit a Rule 56.1 statement in conformity with the Local Rules." Emanuel v. Griffin, No. 13-cv-1806 (JMF), 2015 WL 1379007, at *2 (S.D.N.Y. Mar. 25, 2015). "[W]here there are no citations or where cited materials do not support factual assertions in the [Rule 56.1 statements], the Court is free to disregard the assertion." Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 73 (2d Cir. 2001) (quoting Watt v. N.Y. Botanical Garden, No. 98-cv-1095 (BSJ), 2000 WL 193626, at *1 n.1 (S.D.N.Y. Feb. 16, 2000)) (internal alterations omitted). Thus, the Court will not consider any unsupported alleged facts or assertions, and even if considered, will note the limitations of the evidence in the analysis below.

Plaintiff's responses to defendants' Rule 56.1 statement fare no better. Plaintiff cursorily denies many of the allegations, routinely responding to defendants' factual assertions with: "Plaintiff has no knowledge of the aforementioned and asserts that

Defendants have produced no evidence which would be admissible at trial, in support of the foregoing." <u>See</u> Counterstatement to Rule 56.1 Statement ("Pl. 56.1"), ECF No. 75.  This response, contrary to the local rule, does not identify any fact in the record that refutes or challenges defendants' assertion, nor does it identify the specific objection.  "Responses of this nature, which do not point to any evidence in the record that may create a genuine issue of material fact, do not function as denials, and will be deemed admissions of the stated fact." <u>Senno v. Elmsford Union Free Sch. Dist.</u>, 812 F. Supp. 2d 454, 458 (S.D.N.Y. 2011) (citing cases); <u>see also</u> <u>Feis v. U.S.</u>, 394 F. App'x 797, 799-800 (2d Cir. 2010) (summary order).

The Court is, however, mindful that "[t]he local rule does not absolve the party seeking summary judgment of the burden of showing that it is entitled to judgment as a matter of law, and [that] Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record." <u>Holtz</u>, 258 F.3d at 74.  As a consequence, rather than "streamlin[ing] the consideration of [the pending] summary judgment motions" as the local rule intended, <u>id.</u>, the net effect of plaintiff's deficient submissions is to impose upon the Court the added burden of combing through the record to assure itself that the asserted facts are supported by admissible evidence.

Accordingly, where the Court relies on uncontroverted or improperly controverted paragraphs in defendants' 56.1 statements, it does so only where the record duly supports defendants' contentions.  This is precisely what Local Rule 56.1 was designed to avoid.

### III. Factual Background

#### a. Relationship between Altec, Westview, and Fenda

AL Infinity is the trademark owner of the consumer electronics brand Altec Lansing, which manufactures, imports, sells (or licenses to others to manufacture and sell) consumer electronics. Franco Decl. ¶ 2.  While the trademarks date as early as 1956, plaintiff only acquired the rights in 2012.  Def. Statement of Material Facts ("Def. 56.1") ¶¶ 7-8.  From its inception until 2006; Altec Lansing Technologies, Inc. owned the trademark. Thereafter, it was owned by Plantronics, Inc. from 2006 to 2009 and by Altec Lansing, LLC from 2009 to 2012.  Id. ¶ 9.

Core to this dispute, these predecessors had relationships with both an affiliate of Fenda and third-party defendant Westview. For instance, the record includes a 2004 Memorandum of Understanding between Altec Lansing Technologies Inc., the original trademark owner, and an affiliate of Fenda, called ShenZhen Baon Fenda Industrial Co., Ltd., which stated that "both parties wish to enter a customer/supplier arrangement." Id. ¶ 15;

Nixon Decl., Ex. 6, ECF No. 63.  Additionally, Plantronics, Inc. entered into a Vendor Management Inventory Addendum with the same Fenda affiliate in 2009, in which Fenda agreed to supply certain goods to Plantronics.[3]  Def. 56.1 ¶ 16; Nixon Decl. Ex. 7.

Similarly, there is evidence in the record that at least one of plaintiff's predecessors also had a relationship with Westview to distribute Altec Lansing goods.  Specifically, in 2003, Plantronics entered into the Sales Representative Agreement with Westview.  Under this agreement, Westview would solicit orders for products bearing Altec Lansing Trademarks.[4]  Def. 56.1 ¶ 11; Nixon Decl. Ex. 5.

### b. Purchase of Speakers by Crown Cell

Founded in 2014 by defendant Herschel Spalter, defendant Crown Cell operates an online marketplace through which it sells products to consumers.  Def. 56.1 ¶¶ 3, 21.  In 2016 and 2017,

---

[3] The agreement notes that the specific goods are listed in Exhibit A to the agreement, however, this exhibit was not included in the document provided as Exhibit 7 to the Nixon Declaration.

Additionally, the Court notes that it does not consider defendants' allegation that in 2012 Fenda was granted "a license to sell products under Altec LLC's brand name using the materials already procured to fill Altec LLC's prior order."  Nixon Decl. Ex. 9. at 5.  The only support for this fact is an order granting a motion to dismiss from Judge Curiel in the Southern District of California, which relies on the allegations of a complaint filed by Shenzhen Fenda Technology Co., Ltd. against Altec Lansing.  The statement in a complaint by a third party is not admissible here.

[4] Once again, although defendants reference another agreement with Westview, Def. 56.1 ¶ 13, the support listed in the Rule 56.1 statement is inadmissible under Federal Rule of Evidence 408, and therefore the Court does not consider this in its analysis.

Crown Cell purchased two models of Altec Lansing speakers –– VS4621 and BXR1220.  These speakers were an older set of wired desktop speakers that included copyright notices from 2008-2010, 2010, and 2012, and had been available on the market since at least 2009. Def. 56.1 ¶¶ 31-33.

Crown Cell purchased the speakers directly from Westview. Id. ¶ 26.  Specifically, Crown Cell's employee, defendant Boyarsky contacted Allen Steinberg at Westview to order the speakers.  Id. ¶ 25.  Boyarsky testified that this was not his first experience with Steinberg or Westview, as he had worked with Westview and Steinberg for years during a prior employment.  Id. ¶¶ 34, 37.  He testified that he "had full faith in Westview," as he had known Westview for years and "knew they were a reputable firm for many years."  Id. ¶ 34.

To supply Crown Cell with the speakers, Westview in turn purchased them from Fenda, a Chinese entity.  Id. ¶ 29.  It is unclear from the record exactly what Fenda did in order to supply the speakers to Westview.  Plaintiff argues that Fenda "manufactured" the speakers in 2016 and 2017, offering for support two sets of emails attached to or screenshotted in the declarations of Franco and Steinberg.[5]  Pl. Mem. of Law ("Pl. Br.") at 9, ECF

---

[5] As noted earlier, this submission is contrary to Local Rule 56.1.

No. 76.  The first set of emails contains communications between Boyarsky at Crown Cell and Steinberg at Westview, in which there are references to an approximately one-month "lead time," as well as "factory production times" for the speakers.  See Franco Decl. ¶¶ 33-38.

The second set of emails are between Steinberg and employees at Fenda.  While the Court doubts the admissibility of these emails, they contain similar statements regarding "lead times," the "completion of goods," and Fenda's ability to "produce goods."[6] See Id. ¶¶ 59-67.  At best, Fenda states that it needs to "reorder materials" and "produce the goods [with] almost 90% [] new materials."  Id. ¶¶ 64, 67.

Overall, between March 2016 and January 2017, Westview purchased from Fenda and sold to Crown Cell 10,456 units of the two speakers.  Def. 56.1 ¶ 29.  Once defendants received the speakers, they offered them for sale on Amazon.com and Walmart.com and ultimately sold 6,705 of the speakers.  Id. ¶¶ 38-39.

### c. Cease-and-Desist Letter

After plaintiff learned of defendants' sales, it sent a cease-and-desist letter to Crown Cell on May 4, 2017.  Id. ¶ 41.  The next day Crown Cell responded, stating,

---

[6] As discussed in footnote 9, defendants argue and the Court agrees that emails with Fenda are hearsay.

>Please be advised that we have purchased the Altec
>Lansing speakers from Allen Steinberg at West-view
>industries he has a very close relationship with the
>infinity group and we have forwarded this to him.   He
>assured us he will reach out to the the [sic] infinity
>group and will resolve any issues . . . For the time
>being we have removed our listing from Walmart.com.

Id. ¶ 42; Nixon Decl. Ex. 10.   Crown Cell testified that it

ultimately disposed of the remaining inventory "to avoid having to

pay storage costs."  Id. ¶ 45.

### STANDARD OF REVIEW

Summary judgment is properly granted where "there is no

genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law."  Fed. R. Civ. P. 56.  "A genuine

issue of material fact exists if 'the evidence is such that a

reasonable jury could return a verdict for the non-moving party.'"

Nick's Garage, Inc. v. Progressive Cas. Ins. Co., 875 F.3d 107,

113-14 (2d Cir. 2017) (quoting Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 248 (1986)).  The movant "always bears the initial

responsibility of informing the district court of the basis for

its motion," as well as the basis for any absence of material fact

in dispute.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

In "moving for summary judgment against a party who will bear the

ultimate burden of proof at trial, the movant must satisfy this

burden by pointing to the absence of evidence to support an

essential element of the non-moving party's claim."  Gummo v. Vill.

of Depew, N.Y., 75 F.3d 98, 107 (2d Cir. 1996).  Courts must "construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." Gilman v. Marsh & McLennan Cos., Inc., 826 F.3d 69, 73 (2d Cir. 2016).

If the moving party makes a showing that it is entitled to summary judgment, "[t]hen the onus shifts to the party resisting summary judgment to present evidence sufficient to satisfy every element of the claim."  Holcomb v. Iona Coll., 521 F.3d 130, 137 (2d Cir. 2008).  The non-moving party "may not merely rest on the allegations or denials of his pleading; rather his response . . . must set forth 'specific facts' demonstrating there is a genuine issue for trial."  Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  A "scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]."  Anderson, 477 U.S. at 252.  "If no rational fact finder could find in the non-movant's favor, there is no genuine issue of material fact, and summary judgment is appropriate."  Citizens Bank of Clearwater v. Hunt, 927 F.2d 707, 710 (2d Cir. 1991).

## DISCUSSION

As noted previously, both parties seek summary judgment, with plaintiff moving for summary judgment on all five counts and

-14-

defendants moving for summary judgment on only the federal counterfeiting claim.   The Court first addresses the federal trademark counterfeiting claim and finds that plaintiff has failed to provide evidence that the goods were actually counterfeit. Having failed to meet its burden, plaintiff's motion is denied and defendants' motion for summary judgment is granted.   The Court then evaluates the remaining four causes of action, and for the same reasons, denies plaintiff's motion for summary judgment on each count.

### I.   Counterfeiting Under 15 U.S.C. § 1114

The Lanham Act (the "Act") provides protection when, "without the consent of the registrant," a person "use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive."   15 U.S.C. §1114(1).   To establish infringement, courts evaluate whether there is a likelihood of confusion, employing the factors set out in the Second Circuit decision in Polaroid Corp. v. Polarad Electronics Corp., 287 F.2d 492 (2d Cir. 1961).   If infringement is established, plaintiff can seek compensatory damages or disgorgement of infringer's profits. 15 U.S.C. § 1114.

However, the Act provides special rules and enhanced remedies when use of the mark transcends simple trademark infringement and instead involves counterfeiting.  Counterfeiting is considered to be the "'hard core' or 'first degree' trademark infringement that seeks to 'trick the consumer into believing he or she is getting the genuine article.'"  Gucci Am., Inc. v. Guess?, Inc., 868 F. Supp. 2d 207, 242 (S.D.N.Y. 2012) (quoting 4 McCarthy on Trademarks and Unfair Competition § 25:10 (5th Ed.)).  The Act defines a counterfeit mark as a "spurious mark which is identical with, or substantially indistinguishable from, a registered mark."  15 U.S.C. § 1127.

Substantively, there are two main differences when evaluating a claim for counterfeiting compared to one for simple infringement.  First, if there is counterfeiting, confusion is presumed.  When a case involves counterfeit products, "it is not necessary to perform the step-by-step examination of each Polaroid factor because counterfeit marks are inherently confusing."  Fendi Adele S.R.L v. Filene's Basement, Inc., 696 F. Supp. 2d 368, 383 (S.D.N.Y. 2010) (quoting Burberry Ltd. v. Euro Moda, Inc., No. 08-cv-5781 (CM), 2009 WL 1675080, at *8 (S.D.N.Y. June 10, 2009)).  And second, because the law views counterfeiting as a more serious form of infringement, the statute provides for additional remedies.  For instance, a plaintiff can seek ex parte seizure orders, 15 U.S.C.

§ 1116; statutory damages, id. § 1117(c); and treble damages, id. § 1117(b).  As for statutory damages, if the infringement involves counterfeiting, the plaintiff can elect statutory damages of "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold."   Id. § 1117(c).   If the counterfeiting is willful, plaintiff can seek even greater statutory damages, up to $2,000,000 per counterfeit mark per type of good.  Id.

In order to prove counterfeiting, a plaintiff needs to show that the goods are not genuine, and instead contain a "spurious mark."  15 U.S.C. § 1127.  The Act does not further define counterfeit goods.  However, in seeking any of the special remedies (i.e., statutory damages, treble damages, or ex parte seizure orders), the Act specifically excludes "any mark or designation used on or in connection with goods or services of which the manufacture [sic] or producer was, at the time of the manufacture or production in question authorized to use the mark or designation for the type of goods or services so manufactured or produced, by the holder of the right to use such mark or designation."  15 U.S.C. § 1116(d).  This "effectively excludes parallel imports, gray goods and production overruns from the definition." 4 McCarthy on Trademarks and Unfair Competition § 25:15 (5th Ed.); see also Chanel Inc. v. WGACA, LLC, No. 18-cv-2253 (LLS), 2022

U.S. Dist. LEXIS 55880, at *40 n.9 ("A counterfeit is a copy which is so close that it is difficult to tell from an original.  Thus, a shoe which is made in the manufacturer's factory, and meets it [sic] specifications, but is unauthorized for sale, is an infringement, but not a counterfeit.")  Therefore, if a good is produced by an authorized manufacturer, it is not considered to be counterfeit.

Both parties believe they are entitled to summary judgment as to trademark counterfeiting, with defendant splitting its motion into two parts:  (1) that the counterfeiting claim fails as a matter of law; and (2) that, even if there was counterfeiting, plaintiff is not entitled to enhanced damages for willful counterfeiting, as it was not willful.  The Court begins with plaintiff's motion and then evaluates defendants' motion.

### a. Plaintiff's Motion for Summary Judgment

Plaintiff argues it is entitled to summary judgment on the counterfeiting claim.  Plaintiff's motion is denied because, despite the additional time to build a factual record, plaintiff has failed to establish the basic fact that the goods were counterfeit.

First and foremost, plaintiff never purchased or inspected the speakers at issue to evaluate if they differed in any way from authentic goods.  This litigation failure deprives the Court of

the most effective tool it has to determine whether a plaintiff
has met its burden at summary judgment, namely a side-by-side
comparison revealing whether there are slight deviations between
the goods at issue and the authentic goods.  See Gucci Am., Inc.
v. Duty Free Apparel, Ltd., 286 F. Supp. 2d 284, 288 (S.D.N.Y.
2003); Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse
Corp., 689 F. Supp. 2d 585, 597 (S.D.N.Y. 2010), amended on
reconsideration (Mar. 23, 2010); Fendi, 696 F. Supp. 2d at 383-
384; see also Chanel, 2022 U.S. Dist. LEXIS 55880, at *42-*44
(holding plaintiff met its prima facie burden when it offered
evidence that plaintiff's internal records did not include
products with that serial number and the products did not conform
to plaintiff's standards); Zino Davidoff SA v. CVS Corp., 571 F.3d
238, 243 (2d Cir. 2009) (upholding grant of preliminary
injunction).  In fact, in this Court's experience, it is routine
for a plaintiff in a trademark suit to buy an allegedly infringing
product.  Yet, at no point before or after filing the suit was
this simple effort taken.[7]  If it had been, plaintiff could have
put to bed once and for all the core issue in the case.

---

[7] The Court is aware that the speakers were eventually destroyed.  According to defendants, they were complying with the cease-and-desist request not to sell the disputed products and accordingly could not continue to pay for the storage fees.  Def. 56.1 ¶ 45.

Second, no effort was made to obtain discovery from Fenda. The Court identified early on in the litigation that discovery from the Chinese entity would be central to determining whether the goods were counterfeit. The Court raised this issue with the parties and even provided additional time after discovery had concluded to pursue this line of inquiry. However, defendant informed the Court it would not seek any depositions from Fenda, see ECF No. 52, and the Court is not aware of any subpoena sent to Fenda. This is striking given that plaintiff alone bears the burden to prove counterfeiting in a case it claims is worth $4 million. Pl. Br. at 18.

Instead, plaintiff rests its case entirely on two sets of vague emails included within or as attachments to the two declarations filed with its motion.[8] Plaintiff suggests that these emails establish that "the Altec Lansing product at issue was manufactured when ordered in 2016 and 2017, not before." Pl. Br. at 9.

The first set of emails between Boyarsky at Crown Cell and Steinberg at Westview simply references the approximately one-month "lead times" and "factory production times" for the speakers. See Franco Decl. ¶¶ 33-38. These references to "production" are

---

[8] As noted previously, this is not in compliance with Local Rule 56.1 and the Court is permitted to disregard these statements. Nonetheless, we will evaluate the emails.

insufficient as there is no other evidence describing what was actually done to produce the goods.  If anything, the fact that the lead times are relatively short (about 30 days) weighs against plaintiff's presumption that the products were entirely produced when ordered.

Likewise, the second set of emails between Steinberg and employees at Fenda cannot meet plaintiff's burden.  First, aside from the deficiencies in the Rule 56.1 statement, the Court has serious concerns about their admissibility.  Defendants argue, and the Court agrees, that the emails, and in particular the statements of Fenda, are hearsay.[9]  Def. Reply Mem. of Law. at 5-6, ECF No. 79.

---

[9] Defendants argue that the statements of the Fenda employees are hearsay and inadmissible.  Plaintiff responds that the emails are admissible as: (1) business records; (2) adoptive admissions; (3) statements against interest; or (4) statements related to state of mind.  Pl. Reply at 3-8, ECF No. 81.  The Court is not convinced that the emails fall into any of these exceptions or exclusions.

First, under Rule 803(6), for a document to be considered a business record, it must be shown that: (1) the record was made "at or near the time by . . . someone with knowledge," (2) in the course "of regularly conducted [business] activity," and (3) that creating the record "was a regular practice of that activity."  Fed. R. Evidence 803(6).  The rule requires the "testimony of the custodian or another qualified witness or by a certification."  Id. Here, there is no certification that these emails were produced in the normal course of business.  Further, even the accompanying Steinberg declaration does not state the emails were produced in the normal course of business.  See ECF No. 74.

Moreover, plaintiff seeks to admit the statements made by third-party Fenda in these emails, and there is absolutely no evidence that Fenda sent these emails as part of the normal course of business.  While "[a]n email could conceivably qualify as a business record if, for example, it confirms a sale," when the emails, as is the case here, "contain unique and sporadic communications, not created as a record of any 'regularly conducted business activity,'" they are not admissible under Rule 803(6).  New World Trading Co. Ltd. v. 2 Feet Productions, Inc., Nos. 11-cv-6219, 13-cv-1251, 2014 WL 988475, at *1 (S.D.N.Y. Mar. 13, 2014).

Nevertheless, even if the Court were to consider the emails, which it need not, they are not the "smoking gun" evidence that plaintiff touts them to be.   At best, the emails contain statements from Westview referencing Fenda's ability to "produce goods," the "lead times" needed, and the "completion of production," and a statement by Fenda that it needed to "reorder materials" and "produce the goods [with] almost 90% [] new materials."  See Franco Decl. ¶¶ 59-67.  Once again, the record contains no detail as to what Fenda actually did to "produce" the goods and whether that production alone made the goods counterfeit.   Plaintiff cannot fail to investigate and then rely on ambiguity to prove its case.

---

Next, plaintiff argues that Westview adopted the admissions of Fenda, and therefore they are not hearsay under Federal Rule of Evidence 801(d)(2)(B).  To adopt the statements in a document, the adoptive party needs to "accept[] and act[] upon the evidence."  Wright-Simmons v. City of Oklahoma City, 155 F.3d 1264, 1268 (10th Cir. 1998).  For instance, seeking an employee's resignation was considered to be an adoption of an investigation report, id. at 1268-1269, and implementing recommendations in a report was considered to be action upon and adoption of the report, Pekelis v. Transcontinental & Western Air, Inc., 187 F.2d 122, 128-129 (2d Cir. 1951).  Here, plaintiff only states that by buying the goods, third-party defendant Westview adopted Fenda's statements as to the production of the goods.  Pl. Reply at 7.  The Court is not convinced this action was an adoption of Fenda's statements.

Plaintiff then claims that Fenda's statements are admissions against interest under Rule 804.  Aside from the fact that Fenda is not unavailable as is required by Rule 804, the rule also requires that the statement be "so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or monetary liability."  Fed. R. Evid. 804(b)(3)(A). The Court does not believe the email is the "smoking gun" plaintiff alleges, and as such is not sufficiently against Fenda's interest.

Finally, plaintiff's argument that the emails "reflect [Fenda's] state of mind, i.e., motive intent or plan (in this case to proceed with a purchase of the goods in question)" also fails.  Pl. Reply at 8.  Fenda's statements are not being offered for its state of mind, but for the truth of the matter asserted.

Further, even if Fenda did entirely manufacture the speakers in 2016 and 2017, plaintiff does not provide any evidence that Fenda was not permitted to do so.  According to the Lanham Act, if "at the time of the manufacture or production in question," the producer or manufacturer was "authorized to use the mark or designation for the types of goods," then the goods are not considered to be counterfeit.  15 U.S.C. § 1116(d).  Here, the record contains no evidence as to who was permitted to manufacture the goods or, alternatively, that the speakers were no longer authorized to be in production at that time.  This is evidence uniquely within plaintiff's control, and the absence of this evidence is telling, given the evidence in the record that a Fenda affiliate was at one point authorized to produce Altec Lansing goods.

Ultimately, plaintiff cannot fail to produce evidence and nevertheless seek victory.  Therefore, the Court denies plaintiff's motion for summary judgment.

### b. Defendants' Motion for Summary Judgment

In addition to opposing plaintiff's motion for summary judgment, defendants have affirmatively moved for summary judgment on the counterfeiting claim, maintaining that: (1) plaintiff failed to meet its burden that the goods were counterfeit; and

(2) even if they were counterfeit, the defendants did not act willfully.  The Court fully agrees.

First, as defendants do not bear the burden of proof, they only need to "point[] to an absence of evidence to support an essential element of the non-moving party's claim."  Gummo, 75 F.3d at 107.  Defendants have met their prima facie burden for the same reasons that plaintiff's motion for summary judgment fails. Plaintiff has failed to present evidence that the goods were in fact counterfeit.

Separate and apart from plaintiff's failure, defendants have presented affirmative evidence that plaintiff's predecessors had agreements with both Fenda and Westview, revealing that, at least at one point, Fenda and Westview were authorized to make or sell Altec Lansing products.  Def. 56.1 ¶¶ 11, 15-16.  Specifically, defendants produced evidence that an affiliate of Fenda previously had contracts with Altec Lansing Technologies, Inc. and Plantronics. Inc. to supply or produce Altec Lansing goods.  Id. ¶¶ 15-16.  Further, there is no evidence as to whether or when that arrangement was terminated.  Moreover, defendants presented evidence that Fenda was listed as a top exporter of Altec Lansing products.  Id. ¶ 17.

Similarly, the record contains an agreement between Westview and Plantronics, Inc., which allowed Westview to solicit orders

for Altec Lansing goods.  Id. ¶ 11; Nixon Decl. Ex. 5.  This is
coupled with testimony from defendant Boyarsky that he knew that
Westview and Steinberg were at least previously authorized to sell
Altec Lansing products.  Def. 56.1 ¶¶ 36-37.

Finally, defendants have presented evidence that the speakers
at issue were not the latest model, but older models that had been
available since at least 2009.  Id. ¶ 32.  The fact that these
were older models support defendants' argument that the speakers
were produced while Fenda or Westview had a license to do so.

Given defendants' submissions, the burden shifts to plaintiff
to establish a genuine issue of material fact.  To defeat a motion
for summary judgment, the non-moving party must "set forth
'specific facts' demonstrating there is a 'genuine issue for
trial.'"  Wright, 554 F.3d at 266.  As discussed previously,
plaintiff failed to muster evidence that the goods were
counterfeit.  Moreover, plaintiff failed to properly respond to
defendants' Rule 56.1 statement by identifying specific evidence
to rebut its assertions.  Even looking outside the Rule 56.1
statement, at most, all plaintiff can rely upon are the emails
between Boyarsky and Steinberg and those between Steinberg and
employees at Fenda.  While these emails reference "production" and
"completion" of the products, the Court, as well as plaintiff,
still do not know what was done by Fenda to "produce" the goods or

whether Fenda was permitted to produce the speakers at that time. "Though we must accept as true the allegations of the party defending against the summary judgment motion, drawing all reasonable inferences in his favor, conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996). In sum, on the record presented, defendants are entitled to summary judgment.

Having granted defendants' motion for summary judgment that the goods were not counterfeit, plaintiff cannot establish that it is entitled to any damages, let alone the enhanced damages for willful counterfeiting. That being said, the Court notes that the evidence is strong that any alleged counterfeiting was not willful.

As discussed, Boyarsky testified that he had a prior relationship with Westview and Steinberg and that he had known the two to be reputable sources from whom to purchase authentic goods. Def. 56.11 ¶¶ 34-35. Further, it is telling that, immediately upon receiving plaintiff's cease-and-desist letter, defendant responded that:

> [W]e have purchased the Altec Lansing speakers from Allen Steinberg at West-view industries he has a very close relationship with the infinity group and we have forwarded this to him. He assured us he will reach out to the the [sic] infinity group and will resolve any issues . . . For the time being we have removed our listing from Walmart.com.

-26-

Id. ¶ 42.  Not only did defendants express that they had purchased the goods from a group that had a relationship with plaintiff, but they immediately removed the items for sale, lest they be counterfeit.  These acts rebut any suggestion that defendants' conduct was willful.  Therefore, the Court grants defendants' motion for summary judgment in full.

## II.  Remaining Claims

In addition, plaintiff seeks summary judgment on the remaining four claims in the complaint.  For plaintiff to win on each claim, it is required to prove that the speakers sold by defendants were not authentic.  As discussed at length previously, plaintiff has failed to do so.  The Court briefly addresses each cause of action below and denies each of plaintiff's motions for summary judgement.

### a. False Advertising and Unfair Competition Under Section 43(a)(1)(B) of the Lanham Act

The Lanham Act imposes liability on "any person who, in connection with any goods or services . . . uses in commerce . . . any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of . . . another person's goods, services, or commercial activities."  15 U.S.C. § 1125(a)(1)(B).  The challenged promotion must be either

literally false or likely to mislead or confuse consumers.  <u>Tiffany
(NJ) Inc. v. eBay Inc.</u>, 600 F.3d 93, 112 (2d Cir. 2010).

Plaintiff argues that defendants' promotion of the speakers
on Walmart.com was "literally false" as "the unambiguous message
sent by this promotion was that Defendants offered for sale
authentic Altec Lansing Products."  Pl. Br. at 12-13.  However,
for all the reasons already outlined, plaintiff has not established
that the products were inauthentic.[10]

### b. Injury to Reputation and New York State Anti-Dilution under New York General Business Law § 360-l

Plaintiff also moves for summary judgment on its anti-
dilution claim under New York General Business Law § 360-l.  This
requires that plaintiff show that plaintiff's mark is distinctive
and that there is a likelihood of "blurring."  <u>Deere & Co. v. MTD
Products, Inc.</u>, 41 F.3d 39, 42-43 (2d Cir. 1994).  Dilution by
blurring occurs where "defendant uses or modifies the plaintiff's
trademark to identify the defendant's goods and services, raising
the possibility that the mark will lose its ability to serve as a
unique identifier of the plaintiff's product."  <u>Id.</u> at 43.  "The
ultimate question under New York law is whether there is a

---

[10] Plaintiff argues that, for this claim, "it is immaterial that the products
may, at one point, have been authentic," because this "does not mean that they
continued to be when the trademark owner, AL Infinity or its predecessor,
withdrew its permission."  Pl. Br. at 13 n.1.  Ignoring the fact that the case
cited by plaintiff involved a different section of the Lanham Act, plaintiff
has presented no evidence that AL Infinity or its predecessors actually withdrew
its permission from Fenda.

likelihood that the capacity of the senior owner's mark 'to serve as a unique identifier of its source' will be diminished." <u>Coty Inc. v. Excell Brands, LLC</u>, 277 F. Supp. 3d 425, 459 (S.D.N.Y. 2017) (quoting <u>Louis Vuitton Malletier v. Dooney & Bourke, Inc.,</u> 561 F. Supp. 2d 368, 393 (S.D.N.Y. 2008)).

Once again, there can only be a viable claim if defendant is in fact selling inauthentic goods.  <u>See</u> <u>Ergowerx Intern., LLC v. Maxell Corp. of Am.,</u> 18 F. Supp. 3d 430, 451 (S.D.N.Y. 2014) (holding that "blurring cannot exist under N.Y. Gen. Bus. Law § 360-l when the products at issue are genuine").  As explained above, plaintiff has not proven that the goods were inauthentic, and thus, the Court denies plaintiff's motion for summary judgment.[11]

### c. Use of Name or Address with Intent to Deceive under New York General Business Law § 133

Similarly, plaintiff's motion for summary judgment under New York General Business Law § 133 fails.  Section 133 provides that a person or company cannot use any name to deceive or mislead the public about the person's or company's identity, connection with another person or company, address, or location.  N.Y. Gen. Bus.

---

[11] The Court also notes that the only remedy available under N.Y. Gen. Bus. L. § 360-l is injunctive relief, and therefore, it cannot provide any money damages sought by plaintiff.  N.Y. Gen Bus. L. § 360-l ("Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief").

L. § 133.   While plaintiff only offers the conclusory argument
that "[d]efendants' conduct amounts to a violation," Pl. Br. at
15, plaintiff's claim once again rests on whether the goods were
authentic.   For all the reasons previously explained, plaintiff
has not proven that, and therefore the motion as to this claim is
likewise denied.

### d. Common Law Trademark Infringement and Unfair Competition

Finally, plaintiff seeks summary judgment on its state common
law trademark infringement and unfair competition claims, which
largely "mirror the Lanham Act claims." Lopez v. Gap, Inc., 883
F. Supp. 2d 400, 430 (S.D.N.Y. 2012) (quoting Lorillard Tobacco
Co. v. Jamelis Grocery. Inc., 378 F. Supp. 2d 448, 456 (S.D.N.Y.
2005)).   In light of the earlier ruling on Lanham Act claims, the
Court denies plaintiff's motion for summary judgment.[12]

### e. Summary Judgment to Non-Moving Party Under Rule 56(f)

The Court has the power under Rule 56(f) to "grant summary
judgment for a nonmovant," here defendants, "[a]fter giving notice
and reasonable time to respond." Fed. R. Civ. P. 56(f).   Having
found that plaintiff has not met its burden to prove that the goods
sold were counterfeit, the predicate for the remaining four causes

---

[12] Moreover, the unfair competition claim also requires a showing of bad faith.
Lopez, 883 F. Supp. 2d at 430-31.   For the same reasons that the Court held
that defendant did not act willfully with regards to counterfeiting, defendants
equally did not act in bad faith.

-30-

of action no longer exists.   In these circumstances, even though defendants have not moved, they are entitled to summary judgment on the remaining claims in the amended complaint.   Therefore, unless plaintiff can refute the Court's legal logic within 14 days, the Court will enter summary judgment for defendants on all causes of action.   To be perfectly clear, any submission from plaintiff may not seek to reargue the Court's decision that the record fails to establish counterfeiting.

### CONCLUSION

Accordingly, for the reasons stated above, plaintiff's motion for summary judgment is denied in its entirety and defendants' motion for summary judgment is granted.   The Clerk of the Court is respectfully directed to close the motions pending at ECF Nos. 60 and 70.

**SO ORDERED.**

Dated:    New York, New York
          August 9, 2023

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

-31-