UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
AL INFINITY, LLC,

               Plaintiff,

       - against -

CROWN CELL, INC., HERSCHEL SPALTER,
ISSER BOYARSKY, and DOES 1-10,

             Defendants.
------------------------------------X

**MEMORANDUM AND ORDER**

20 Civ. 4813 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Plaintiff AL Infinity LLC ("AL Infinity" or "plaintiff"), the most recent owner of the Altec Lansing trademark, sued defendant Crown Cell, Inc. ("Crown Cell"), its founder Herschel Spalter ("Spalter"), and its employee Isser Boyarsky ("Boyarsky," and together with Crown Cell and Spalter, "defendants") after defendants sold two types of speakers bearing the Altec Lansing trademark. Plaintiff asserted five causes of action: (1) federal trademark counterfeiting under 15 U.S.C. § 1114; (2) federal trademark infringement under 15 U.S.C. § 1125(a); (3) injury to business reputation and state anti-dilution; (4) deceptive trade practices; and (5) common law unfair competition. See ECF No. 26.

As the Court has repeatedly made clear from the outset of this litigation, plaintiff's claims all turn on the fundamental question of whether the speakers in question were genuine or counterfeit. Indeed, plaintiff was given numerous opportunities,

including an extension of time to complete discovery, specifically to build its factual record so that it could eventually carry its burden of demonstrating that the speakers in question were in fact counterfeit.  Although plaintiff did not avail itself of these opportunities, it nonetheless cross-moved for summary judgment on all its claims in response to defendants' motion for summary judgment only as to the first cause of action for counterfeiting.

On August 9, 2023, the Court issued a Memorandum and Order (the "Order") denying plaintiff's motion and granting defendants' motion because plaintiff "failed to present evidence that the goods were in fact counterfeit" and defendants "presented affirmative evidence" demonstrating that the speakers in question were supplied and distributed by entities that, "at least at one point," were "authorized to make or sell Altec Lansing products."  ECF No. 83 at 24.  Further, because plaintiff did not provide any evidence that such authorization was ever withdrawn, the Court concluded that plaintiff did not meet its burden of showing that the goods sold were not genuine.  Id. at 28, 30.  Based on this conclusion, the Court explained:

> [T]he predicate for [plaintiff's] remaining four causes of action no longer exists.  In these circumstances, even though defendants have not moved they are entitled to summary judgment on the remaining claims in [plaintiff's] complaint. Therefore, unless plaintiff can refute the Court's legal

> logic within 14 days, the Court will enter summary judgment
> for defendants on all causes of action.  To be perfectly
> clear, any submission from plaintiff may not seek to reargue
> the Court's decision that the record fails to establish
> counterfeiting.

Id. at 30-31.  Thereafter, plaintiff made several submissions to the Court, none of which refuted the legal logic of our initial Order or otherwise disturbed our finding that plaintiff failed to establish counterfeiting.  Thus, we will enter summary judgment in favor of defendants on plaintiff's remaining claims.

## BACKGROUND

### A.   Factual Background

Given the Court's prior opinion, we assume familiarity with the factual background of the case and state here only those facts necessary to resolve the issues discussed herein.  As described in our earlier opinion, plaintiff is the trademark owner of the consumer electronics brand Altec Lansing, which manufactures, imports, sells (or licenses to others to manufacture and sell) consumer electronics.  Order at 9.[1]  Although the trademarks date as early as 1956, plaintiff only acquired the rights in 2012.  Id. Prior to that, the trademark was transferred between three

---

[1] For ease of reference, we cite to our original Order, which, in turn, contains citations to the underlying factual record.

-3-

different entities: (1) Altec Lansing Technologies, Inc.; (2) Plantronics, Inc.; and (3) Altec Lansing, LLC (collectively, "plaintiff's predecessors"). Id. at 1-2.

Critically, these predecessors had relationships with third-party defendant Westview Industries, Inc. ("Westview"), and with an affiliate of the Chinese company Shenzhen Fenda Technology Co., Ltd. ("Fenda") to distribute and supply Altec Lansing products. Id. at 2, 9.  Indeed, as the Court explained in its original Order, the record contains several agreements between plaintiff's predecessors and a Fenda affiliate authorizing Fenda to supply certain Altec Lansing goods. Id. at 9-10.  Likewise, the record shows that at least one of plaintiff's predecessors also had a relationship with Westview to distribute Altec Lansing goods. Id.

In 2016 and 2017, Crown Cell purchased two models of Altec Lansing speakers directly from Westview. Id. at 11.  To supply Crown Cell with the speakers, Westview purchased them from Fenda. Id.  Though it is unclear from the record exactly what Fenda did in order to supply the speakers to Westview, Westview eventually purchased from Fenda and sold to Crown Cell 10,456 units of the two speakers. Id. at 11-12.  Once defendants received the speakers, they offered them for sale on Amazon.com and Walmart.com and ultimately sold 6,705 of the speakers. Id. at 12.

-4-

After plaintiff learned of defendants' sales, it sent a cease-and-desist letter to Crown Cell on May 4, 2017.  Id.  Crown Cell immediately complied with plaintiff's demand while noting that it had purchased the goods from what it thought to be a legitimate vendor.  Id. at 13.

**B.  Procedural History**

Plaintiff eventually filed suit and its operative complaint, as outlined above, asserts five causes of action: (1) federal trademark counterfeiting under 15 U.S.C. § 1114; (2) federal trademark infringement under 15 U.S.C. § 1125(a); (3) injury to business reputation and state anti- dilution; (4) deceptive trade practices; and (5) common law unfair competition.  See ECF No. 26. Defendants answered and then filed a third-party complaint against Westview on March 29, 2021.  ECF Nos. 27-28.

After more than a year of discovery, defendants sought leave to move for summary judgment on the federal counterfeiting claim, and their application was subsequently joined by third-party defendant Westview.  See ECF Nos. 45, 47.  However, plaintiff opposed the motion and requested additional discovery.  See ECF No. 46.  The Court then held a conference regarding defendants' proposed motion during which it explicitly addressed plaintiff's

burden to prove that the speakers in question were not genuine. The Court also inquired into whether plaintiff was planning to seek discovery from Fenda. Order at 3-4. Despite indicating its willingness to seek discovery from Fenda during the conference, plaintiff's subsequent proposal regarding the remaining discovery failed to include a schedule for discovery from Fenda. See ECF No. 48. The Court, in explaining the deficiencies in that proposal, once against reminded plaintiff of the "centrality" of a deposition of Fenda. ECF No. 51.

The Court eventually gave plaintiff another 90 days to complete discovery related to counterfeiting, at the conclusion of which defendants were permitted to make their motion. ECF No. 55. After the 90-day period elapsed, plaintiff, for the first time, sought permission to cross-move, and the Court entered a briefing schedule. See ECF Nos. 56, 59. Thereafter, each side filed its respective motions for summary judgment -- plaintiff on all its claims, and defendants only as to plaintiff's federal counterfeiting claim. See ECF Nos. 60-82.

As noted above, the Court issued its order on August 9, 2023, denying plaintiff's motion and granting defendants' motion because "despite the additional time to build a factual record, plaintiff has failed to establish the basic fact that the goods were

-6-

counterfeit." Order at 18. Moreover, the Court found that defendants "presented affirmative evidence that plaintiff's predecessors had agreements with both Fenda and Westview, revealing that, at least at one point, Fenda and Westview were authorized to make or sell Altec Lansing products." Id. at 24. Notably, the Court found no evidence suggesting that these arrangements were ever terminated. Id. At bottom, because there was undisputed evidence that the goods were produced and sold by authorized providers, they could not be considered to be counterfeit. See id. at 17-18 (citing cases).

The Court then addressed plaintiff's four remaining claims, noting that "[f]or plaintiff to win on each claim, it is required to prove that the speakers sold by defendants were [counterfeit]." Id. at 27. Because plaintiff had not met its burden to prove that the goods sold were counterfeit, the Court explained that "the predicate for the remaining four causes of action no longer exists," entitling defendants to summary judgment on the remaining claims. Id. at 30-31. Finally, plaintiff was given 14 days to "refute the Court's legal logic" though it was precluded from "reargu[ing] the Court's decision that the record fails to establish counterfeiting." Id. at 31.

On August 23, 2023, plaintiff filed a letter in response to the Court's Order, arguing that the remaining claims can and should survive because (1) "[i]t is undisputed that the goods in question were sold by a former licensee of the Altec Lansing brand after the expiration of the governing license agreement," and (2) the continued use of a mark by an ex-licensee can constitute a trademark infringement.  ECF No. 85 at 1-2.

In response, the Court filed a letter (the "Letter") stating that it "does not disagree with [plaintiff's] second point," but it "is not convinced that the first point is 'undisputed' or even supported by a factual record."  ECF No. 88 at 1.  The Court then reminded plaintiff that it had "presented no evidence that AL Infinity or its predecessors actually withdrew its permission from Fenda," id. at 2 (quoting Order at 28), and thus "the record presented to the Court did not contain evidence that Fenda was an ex-licensee and therefore that the goods were not genuine," id. Nevertheless, the Court stated "[i]f plaintiff has evidence showing that Fenda was an ex-licensee and that the goods were not genuine, plaintiff may file an additional brief and compliant Local Rule 56.1 statement within 30 days."  Id.  At the same time, the Court reiterated that its "willingness to accept supplemental

briefing should not be taken as an opportunity to reargue issues which have been decided." Id.

On October 17, 2023, plaintiff filed (1) a supplemental Rule 56.1 statement, ECF No. 90 ("Pl. 56.1"); (2) a supplemental declaration of Jeffrey Dweck ("Dweck Decl."), ECF No. 90-1; and (3) a supplemental memorandum of law, ECF No. 90-2 ("Pl. Mem."). On November 14, 2023, defendant filed (1) a response to plaintiff's supplemental Rule 56.1 statement, ECF No. 92 ("Def. 56.1"); and (2) a memorandum of law in response to plaintiff's supplemental memorandum of law, ECF No 91 ("Def. Opp.").

## DISCUSSION

### A.   Legal Standards

Summary judgment is properly granted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Under Rule 56(f), the Court may "grant summary judgment for a nonmovant," here defendants, "[a]fter giving notice and reasonable time to respond." Fed. R. Civ. P. 56(f)(1).  As outlined above, plaintiff has been given ample notice and time to explain why summary judgment should not be granted for defendants on plaintiff's remaining claims, namely: (1) federal trademark infringement under

15 U.S.C. § 1125(a); (2) injury to business reputation and state anti-dilution; (3) deceptive trade practices; and (4) common law unfair competition.  As discussed in our Order, all of these claims necessarily fail if the goods in question are shown to be genuine. See Order at 27-30.

First, the Lanham Act imposes liability on "any person who, in connection with any goods or services . . . uses in commerce . . . any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of . . . another person's goods, services, or commercial activities."  15 U.S.C. § 1125(a)(1)(B).  The challenged promotion must be either literally false or likely to mislead or confuse consumers.  Tiffany (NJ) Inc. v. eBay Inc., 600 F.3d 93, 112 (2d Cir. 2010).

Second, as to plaintiff's anti-dilution claim under New York General Business Law § 360-1, there can only be a viable claim if defendant is in fact selling non-genuine goods.  See Ergowerx Int'l, LLC v. Maxell Corp. of Am., 18 F. Supp. 3d 430, 451 (S.D.N.Y. 2014) (holding that "blurring cannot exist under N.Y. Gen. Bus. Law § 360-l when the products at issue are genuine").

Third, plaintiff's deceptive trade claim under New York General Business Law § 133 requires a showing that defendants "use[d] any name to deceive or mislead the public about [the] company's identity, connection with another person or company, address, or location." N.Y. Gen. Bus. L. § 133 (emphasis added).

Finally, plaintiff's common law trademark infringement and unfair competition claims largely "mirror the Lanham Act claims." Lopez v. Gap, Inc., 883 F. Supp. 2d 400, 430 (S.D.N.Y. 2012) (quoting Lorillard Tobacco Co. v. Jamelis Grocery Inc., 378 F. Supp. 2d 446, 456 (S.D.N.Y. 2005)).

**B.  Application**

In our original Order, we concluded that because plaintiff failed to demonstrate that the goods in question were counterfeit, the predicate for plaintiff's remaining four claims no longer existed. Order at 30-31. We then explained that unless plaintiff can "refute the Court's legal logic," we would enter summary judgment for defendants on all remaining claims. Id. at 31. Rather than even attempt to refute this legal logic, plaintiff has tried to reargue the factual record, claiming that that Fenda was never given permission to sell Altec Lansing products in the first place and therefore the goods in question are not genuine. Pl.

-11-

Mem. at 4-5.  This argument is without merit, and consequently we grant summary judgment for defendants on all causes of action.

As an initial matter, plaintiff's current effort far exceeds the parameters of the Court's grant of an opportunity to challenge the Court's "legal logic."  In both our initial and subsequent orders, we explicitly limited the scope of what plaintiff could raise at this juncture of the litigation.  See Order at 31 (making it "perfectly clear" that "any submission from plaintiff may not seek to reargue the Court's decision that the record fails to establish counterfeiting"); Letter at 2 (stating that this "should not be taken as an opportunity to reargue issues which have been decided").  Even still, we specifically invited plaintiff to put forth any "evidence showing that Fenda was an ex-licensee and that the goods were not genuine."  Letter at 2 (emphasis added).  Despite this opportunity, plaintiff's submissions make no attempt to adduce evidence that Fenda (or Westview for that matter) was an ex-licensee.  Instead, plaintiff seeks only to reargue the factual issue of whether Fenda was ever given permission to sell Altec Lansing products in the first place.  This issue has already been decided, and plaintiff's attempt to reargue it is not condoned.

Moreover, our initial finding that Fenda had a license to manufacture Altec Lansing goods was well-supported by the record.

Relying on the record evidence, the Court noted that there were two agreements between plaintiff's predecessors and a Fenda affiliate to supply certain goods, which indicated that, at least at one point, Fenda was authorized to make Altec Lansing products.[2] See Order at 10-11, 24-26. Critically, the Court found that "there is no evidence as to whether or when that arrangement was terminated." Id. at 24. Furthermore, defendants presented evidence that Fenda was listed as a top exporter of Altec Lansing products and that the speakers at issue were older models, which supported defendants' argument that the speakers were produced while Fenda (and Westview) had a license to do so (even assuming such a license ever expired). Id. at 24-25. Based on these undisputed facts, the Court concluded that Fenda was authorized to supply the speakers and thus the speakers were not shown to be counterfeit.[3]

---

[2] We likewise concluded that a similar relationship existed between plaintiff's predecessors and Westview, Order at 24-26, but plaintiff does not attempt to reargue that conclusion.

[3] Plaintiff has also conceded on several occasions that Fenda was, in fact, an authorized manufacturer for at least some period of time. For example, in an early letter to the Court, plaintiff characterized Fenda as a "former distributor of Altec Lansing goods" and stated that the goods may have been counterfeit even though "a former distributor of the brand was involved." ECF No. 23 at 2. Likewise, in its summary judgment briefing, plaintiff acknowledged that "the products may, at one point, have been authentic Altec Lansing product," and claimed that this was "immaterial." ECF No 76 at 13 n.1.

Plaintiff's eleventh-hour attempts to undermine this conclusion fail. First, plaintiff suggests that although Fenda may have been authorized to <u>manufacture</u> the products, it never had the right to <u>sell</u> those products to Westview, an authorized distributor. Pl. Mem. at 3. This argument, which plaintiff has never raised before, belies common sense. Plaintiff fails to provide, and the Court cannot identify, any reason why a manufacturer such as Fenda would agree to manufacture products that it could not sell. Second, plaintiff seems to quibble with the entities listed in the manufacturing agreements upon which the Court relied. <u>Id.</u> at 4. However, in doing so, plaintiff does not articulate why its predecessors' agreements with Fenda's affiliates are not persuasive evidence that Fenda was an authorized manufacturer. Finally, plaintiff essentially contends that it was improper to rely on allegations in a complaint from a prior, unrelated lawsuit, but in making this argument, plaintiff ignores the fact that the Court expressly disclaimed any reliance on such allegations in reaching our conclusion.[4]  Order at 10 n.3.

---

[4] Plaintiff's suggestion that defendants failed to adduce undisputed evidence of a licensing agreement lacks merit. Pl. Mem. at 3. Indeed, as the Court explained in its initial Order, "defendants have presented affirmative evidence that plaintiff's predecessors had agreements with both Fenda and Westview, revealing that, at least at one point, Fenda and Westview were authorized to make or sell Altec Lansing products." Order at 24. Plaintiff, now as before, has not put forth any evidence to create a genuine dispute over this highly material fact.

## <u>CONCLUSION</u>

In sum, even with a second bite of the apple, plaintiff has done nothing to disturb <u>any</u> finding -- legal or factual -- that we made in our initial Order.  As we explained there, there was record evidence showing that the goods in question were supplied and distributed by authorized entities and thus that the goods were not counterfeit.  Plaintiff put forth no evidence, now or then, to dispute this critical fact, even though the Court gave plaintiff significant time and opportunity to do so.  Moreover, as we noted in our initial Order, the absence of such evidence was striking given that this evidence would be "uniquely within plaintiff's control."  Order at 23.  Based on our finding that the goods in question were not shown to be counterfeit, we held that "the predicate for [plaintiff's] remaining four causes of action no longer exists."  <u>Id.</u> at 30-31.  Even after giving plaintiff ample opportunity to refute this "legal logic," it remains firmly intact, and therefore, we enter summary judgment for defendants dismissing all of plaintiff's causes of action.  The Clerk of Court is respectfully requested to terminate the motion pending at ECF No. 89, enter judgment for defendants dismissing the complaint, and close this case.

**SO ORDERED.**

Dated:       May 1, 2024
             New York, New York

_____
NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

-16-